UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHAWN M. PERRY, *et al.*,                  )
                                            )
          Plaintiffs,                       )
                                            )
     vs.                                    )          Case No. 4:22-cv-140-MTS
                                            )
ST. LOUIS COUNTY, *et al.*,                )
                                            )
          Defendants.                       )

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss, Doc. [22], Plaintiffs' First Amended Complaint ("Complaint"), Doc. [19], pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants in part and denies in part Defendants' Motion.

This case concerns claims by Plaintiff Shawn Perry ("Plaintiff") and her minor children, co-Plaintiffs B.M.S. and B.D.S., against four individual police officers, an individual housing code enforcement official, the chief of housing enforcement, and St. Louis County ("County") for violations of Plaintiffs' Fourth and Fourteenth Amendment constitutional rights. According to the Complaint, Defendants conducted unlawful warrantless searches of Plaintiff's home, seized her home through an unlawful immediate order to vacate and subsequently prohibited Plaintiff from entering her home for nearly three weeks, and unlawfully removed her children from her care and custody for a period of approximately forty days.

## I.   BACKGROUND[1]

On June 8, 2017, Defendants Robert Rinck and Phil Jones arrived at Plaintiff's home

---

[1] The Court draws these facts from Plaintiff's allegations in the First Amended Complaint, Doc. [19]. In so doing, the Court must liberally construe the complaint in favor of Plaintiff and must grant all reasonable inferences in her favor. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010); *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

responding to complaints of unlicensed vehicles on the property and exterior conditions of yard and grass maintenance.  Defendant Rinck worked as a police officer assigned to the St. Louis County Police Department's Problem Properties Unit,[2] and Defendant Jones worked as a housing code enforcement inspector employed by Defendant County.  Defendant Rinck told Plaintiff and Brian Shigemura, Plaintiff's domestic partner and co-occupant of the property, that Defendant Rinck was at Plaintiff's home regarding derelict vehicles in the yard and that he wanted to inspect the property, including the inside of the home.  Neither Defendant Rinck nor Jones had a search warrant.

Defendant Rinck demanded that Plaintiff and Mr. Shigemura grant him and Defendant Jones entry into the interior of their home for purposes of conducting an extensive and warrantless search of their home.[3]  Plaintiff and Mr. Shigemura expressly refused to give Defendant Rinck consent.  According to the Complaint, Defendant Rinck began to make threats such as they could "do this the easy way or the hard way" and if they did not consent to his search of their property, including the interior of the home, Defendant Rinck would "arrest [Plaintiff] right here in front of [her] kids."  Doc. [19] ¶ 35.  When Plaintiff and Mr. Shigemura refused to consent to Defendant Rinck's warrantless search of their home, Defendant Rinck requested the assistance of two additional police officers—Defendants Ed Fingers and Brittany Klein.  "At some point during this conversation", Defendant Fingers and Klein arrived at Plaintiff's home.  *Id.* ¶¶ 38, 40.

After the other officers arrived, Defendant Rinck separated Plaintiff and Mr. Shigemura from each other, and Defendant Rinck spoke to Plaintiff separately and away from Mr. Shigemura. The conversation between Defendant Rinck and Plaintiff lasted approximately one hour or longer.

---

[2] According to the Complaint, as of June 2017, Defendant Rinck was one of only two police officers assigned to Defendant County's problem properties unit, and Rinck conducted nearly all of the searches conducted by Defendant County's problem properties unit.  Doc. [19] ¶¶ 109–10.
[3] Plaintiff and Mr. Shigemura are the biological parents of two minor children, Plaintiffs B.M.S. and B.D.S.

Plaintiff made "multiple [] express refusals to consent to Defendant Rinck's" demand to conduct a warrantless search of her home.  *Id.* ¶ 48.  Defendant Rinck allegedly made a series of escalating threats to Plaintiff in an attempt to force her to capitulate to his demands, from telling her that he "just wanted to talk" to "if [Plaintiff] did not give [Defendant Rinck] consent to search the interior of the property, he would arrest her on a purported outstanding traffic warrant" and culminating with the threat that "if I have to get a warrant, you'll never see your kids again."[4]  *Id.* ¶ 44.   In the face of this last threat to take her children (B.M.S. and B.D.S.), including her autistic son, Plaintiff became "extremely upset" and replied, "I guess I don't have much of a choice."  *Id.* ¶ 45.  At the same time, Mr. Shigemura refused to consent.  Mr. Shigemura's consent was never obtained by Defendants.  Following Plaintiff's capitulation to Defendant Rinck's threat to take her children, Defendants Rinck, Jones, and Fingers entered Plaintiff's home and conducted a full search of the home, including each room of the home and then the basement.  Mr. Shigemura was kept outside of the home and in the custody of Defendant Klein.

After Defendants Rinck, Jones, and Fingers concluded their search and exited Plaintiff's home, an additional male officer, Defendant Ellis, arrived at the property.  Defendant Ellis, alone, conducted a second search of Plaintiff's home without a search warrant or consent.  Neither Plaintiff nor Mr. Shigemura was asked to give nor gave consent for Defendant Ellis to enter the residence and conduct a second search.

Defendant Ellis arrested Plaintiff and Mr. Shigemura for outstanding traffic warrants and allegations of endangering the welfare of a minor.[5]  Defendant Ellis did not speak with Planitiff's

---

[4] Another notable threat was: if Plaintiff allowed Defendant Rinck to search the interior of the home, he would do what he could to make certain that the children were allowed to leave with a family member rather than with a social worker from the Division of Family Services.
[5] Neither Plaintiff nor Mr. Shigemura were ever charged by the St. Louis County Prosecuting Attorney's Office with crimes of endangering the welfare of a minor.

children prior to arresting Plaintiff and Mr. Shigemura on allegations of endangering the welfare of a minor.  Defendant Klein and Ellis took custody of Plaintiff's children, B.M.S. and B.D.S., and transferred them into the custody of the Division of Family Services ("DFS").  Plaintiff told Defendants Klein and Ellis that Mr. Shigemura's sister was enroute to take custody of the children rather than have them taken by DFS.  Defendants Klein and Ellis refused to wait until Mr. Shigemura's sister arrived before transporting B.M.S. and B.D.S. from the property and into the custody of DFS.  B.M.S. and B.D.S. were removed from Plaintiff's custody for approximately forty days before physical custody was returned to her by the family court.

Prior to leaving Plaintiff's property, Defendant Rinck and Jones issued an immediate order to vacate against the property.[6]  According to the Complaint, St. Louis County property ordinances require that orders to vacate be approved by the chief building inspector and/or manager of code enforcement.  *Id.* ¶ 82.  Defendant Marcellus Speight, the chief building inspector and/or manager of code enforcement, was responsible for making final approvals regarding the issuance of immediate orders to vacate in St. Louis County.  Defendant Speight approved the immediate order to vacate for Plaintiff's home, despite alleged knowledge that "Defendant Rinck and the housing inspectors under his supervision, including Defendant Jones, would routinely issue immediate orders to vacate properties at their discretion and without legal justification and/or authority."  *Id.* ¶ 85.

The following day, on June 9, 2017, Plaintiff and Mr. Shigemura returned to their home with and at the request of three DFS employees during daylight hours.  St. Louis County policy permits residents of properties subject to orders to vacate to be at and/or inside of their properties

---

[6] Pursuant to St. Louis County ordinances and the International Property Maintenance Code adopted by St. Louis County ordinances, an immediate order to vacate shall only issue when there is *imminent* risk from toxic fumes or of collapse, implosion, or explosion. According to the Complaint, Plaintiff's home posed no imminent risk of toxic fumes, collapse, implosion, or explosion.

during daylight hours, to abate any allegedly deficient conditions and/or to retrieve personal items. Despite this policy, Defendant Fingers and Rinck prohibited Plaintiff and Mr. Shigemura from entering their home.  Defendant Fingers and Rinck informed Plaintiff that she would not be allowed back inside of the home in the future unless she and Mr. Shigemura consented to additional entry into and search of their home by them and other officers.  Plaintiff and Mr. Shigemura refused to consent to any further searches of their home.  Defendants Rinck and Fingers prevented Plaintiff and Mr. Shigemura from entering and accessing their home and personal items contained inside for approximately two to three weeks.

According to the Complaint, Defendant Rinck "routinely prohibited residents of properties subject to orders to vacate [from] being in their properties during the permitted daylight hours." *Id.* ¶ 90.  Plaintiff also alleges that Defendant Rinck "routinely monitored properties subject to orders to vacate and would order any residents he found there to leave, despite the fact that these residents were lawfully allowed to be in their residences during daylight hours."  *Id.* ¶ 91. Defendants County and Speight allegedly "knew that Defendant Rinck routinely used his authority to prohibit and/or discourage residents of properties subject to orders to vacate for being in their properties during the permitted daylight hours." *Id.* ¶ 92.

Around late June to early July 2017,[7] Plaintiff spoke to Sergeant Charlie Rodriguez, Defendant Rinck's immediate supervisor.  Plaintiff told Sergeant Rodriguez that she wanted to file complaints about Defendant Rinck, the investigation and entry into her home, the taking of her children, and Defendants Rinck and Fingers' subsequent refusals to allow her back inside of her home.  It was only after speaking with Sergeant Rodriguez that Plaintiff and Mr. Shigemura were allowed to be inside of their home during daylight hours.  As a result of Plaintiff's complaint,

---

[7] Plaintiff alleges that "[i]n approximately late June to early July 2019," this event happened.  Doc. [19] ¶ 96.  However, the Court believes that this date (2019) was a drafting error and that they meant to plead "2017" instead.

Sergeant Rodriguez asked Defendant Rinck for all his orders to vacate and/or case files.  Defendant Rinck refused to cooperate with Sergeant Rodriguez's requests. Sergeant Rodriguez had several discussions with Captain Means, the precinct commander, regarding Plaintiff's concerns, Defendant Rinck's refusal to produce his order to vacate and/or case files, and other concerns regarding Defendant Rinck.  Sergeant Rodriguez and/or Captain Means recommended Defendant Rinck's termination from his employment with the St. Louis County police department as the result of Plaintiff's complaints, but no action allegedly was taken.

Prior to the incidents at issue here, Defendant County received multiple complaints about Defendant Rinck, including complaints of warrantless entry and searches of properties.  Two of these complaints eventually culminated into federal lawsuits against Defendant Rinck and County. Plaintiff alleges that Defendant County was aware of Defendant Rinck's prior history and other complaints but nonetheless "allowed Defendant Rinck to continue in these unlawful activities and practices without fear of repercussion or sanction." *Id.* ¶ 111.  According to the Complaint, Defendant Rinck has a "reputation among his peers and supervisors for being an overly-aggressive officer, including but not limited to having a proclivity for obtaining search warrants and requesting that the Tactical Response Unit those execute search warrants, coercing and intimidating residents into allowing him to make warrantless entries into their residences, and/or making forced warrantless entries into properties." *Id.* ¶ 108.

Based on those events, Plaintiff, B.M.S., and B.D.S. filed a sixteen count Complaint against Defendants County, Rinck, Fingers, Klein, Ellis, Jones, and Speight.  Doc. [19].  Plaintiff asserts twelve claims while B.M.S. and B.D.S. assert four claims.  The claims are as follows: Unlawful Search and Seizure in Violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 by Plaintiff against Defendant Rinck (Counts I–II); Unlawful Search and Seizure in Violation of the

Fourth Amendment pursuant to § 1983 by Plaintiff against Defendant Fingers (Counts III–IV); Unlawful Search and Seizure in Violation of the Fourth Amendment pursuant to § 1983 by Plaintiff against Defendant Ellis (Count V); Unlawful Search and Seizure in Violation of the Fourth Amendment pursuant to § 1983 by Plaintiff against Defendant Jones (Count VI); Failure to Intervene pursuant to § 1983 by Plaintiff against Defendant Klein (Count VII); Depravation of Due Process pursuant to § 1983 by Plaintiff against Defendants Rinck, Fingers, Klein, and Ellis (Count VIII);  Unreasonable Removal from the Home in Violation of the Fourth Amendment pursuant to § 1983 by B.M.S. and B.D.S. against Defendants Rinck, Fingers, Klein, and Ellis (Counts IX and XI); Deprivation of Due Process pursuant to § 1983 by B.M.S. and B.D.S. against Defendants Rinck, Fingers, Klein, and Ellis (Counts X and XII); Municipal Liability arising from Failure to Train, Supervise, and/or Discipline pursuant to § 1983 by Plaintiff against Defendant County (Count XIII); Municipal Liability arising from an Unconstitutional Pattern, Practice, or Custom pursuant to § 1983 by Plaintiff against Defendant County (Count XIV); Unlawful Seizure in Violation of the Fourth Amendment pursuant to § 1983 by Plaintiff against Defendant Speight (Count XV); and Failure to Train, Supervise, and/or Discipline pursuant to § 1983 by Plaintiff against Defendant Speight (Count XVI).  In the instant Motion, Defendants seek to dismiss the entire action against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Doc. [22].

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For a pleading to state a claim for relief it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The complaint must contain facts sufficient to

state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570  (2007).

A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to

draw the "reasonable inference" that the defendant is liable for the misconduct alleged.  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  When

considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to

be true and makes all reasonable inferences in favor of the nonmoving party.  *See Neitzke v.*

*Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

However, the Court "need not accept as true plaintiff's conclusory allegations or legal conclusions

drawn from the facts."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## III.   DISCUSSION

The forty-two page Complaint asserts a variety of claims against numerous Defendants.  In

the current Motion, Defendants move to dismiss all sixteen counts.  As to the six individual

Defendants, Defendants ague that Plaintiff, B.M.S., and B.D.S failed to state a claim upon which

relief may be granted and/or that the individual Defendants are entitled to qualified immunity.  As

to Defendant County, Defendants argue that Plaintiff failed to state a claim for *Monell* liability.

The Court will discuss the claims individually.

### A.  Unlawful Search & Seizure in Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 (Counts I–VI)

### i.    Count I—Unlawful Search & Seizure against Defendant Rinck

In her Count I, Plaintiff sued Defendant Rinck for conducting a warrantless entry and

search of her home, using coercion and threats to unlawfully compel Plaintiff to acquiesce to a

warrantless search of her home, and for conducting a warrantless search of her home without

obtaining free and voluntary consent from both her and Mr. Shigemura, a co-occupant of the home

who was present at the time of the search.  In support of their Motion to Dismiss Count I, Defendants argue Defendant Rinck is entitled to qualified immunity because Plaintiff did not sufficiently plead that Defendant Rinck violated a constitutional right.  As a government official, Defendant Rinck is entitled to qualified immunity unless: (1) his conduct violated a constitutional right, and (2) that right was clearly established.  *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (citations omitted).

A warrantless search of the home is "presumptively unreasonable," but a warrantless search conducted pursuant to valid consent, which is "knowing and voluntary," of the person subject to a search is not a Fourth Amendment constitutional violation.  *United States v. Escobar*, 389 F.3d 781, 784 (8th Cir. 2004) (explaining "searches conducted without a warrant issued upon probable cause are presumptively unreasonable" under the Fourth Amendment but a "warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search" (quoting *United States v. Brown*, 763 F.2d 984, 987 (8th Cir. 1985)).  The parties do not dispute this well-established legal principal.  *See* Doc. [23] at 5; Doc. [29] at 8–9.  The parties dispute, however, the requisite pleading at this stage in the litigation to state a Fourth Amendment violation in this context.  The Court finds that Plaintiff sufficiently pleaded facts that plausibly show any consent she may have given for the search of her home was not voluntary, such that Defendant Rinck's warrantless search may have violated her Fourth Amendment right.  *United States v. Elam*, 441 F.3d 601, 604 (8th Cir. 2006) ("'Voluntariness' in this context is limited to whether a person's affirmative consent was the product of police duress or coercion.").

ii.     **Count III—Unlawful Search & Seizure against Defendant Fingers**

In her Count III, Plaintiff similarly sued Defendant Fingers for the same conduct described directly above in Count I.  In support of their Motion to Dismiss Count III, Defendants argue

Defendant Fingers is entitled to qualified immunity because Plaintiff did not sufficiently plead that Defendant Fingers, himself, violated a constitutional right.  "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct.").

Unlike Plaintiff's pleadings regarding Defendant Rinck's conduct, Plaintiff fails to allege any action or statements made by Defendant Fingers that show *he specifically* violated Plaintiff's constitutional rights.  Even assuming Defendant Rinck's conduct in obtaining consent to search the residence was unlawful, Plaintiff still fails to plead any facts that allege Defendant Fingers participated in or acquiesced in unlawfully obtaining consent.[8]  Contrary to Plaintiff's assertion, it is not sufficient to merely plead that Defendant Fingers violated a constitutional right because he searched the residence without a warrant and without consent.  "The Fourth Amendment does not prohibit warrantless searches," *United States v. Hudspeth*, 518 F.3d 954, 960–61 (8th Cir. 2008), rather it prohibits *unreasonable* warrantless searches.  *See* U.S. Const. amend. IV (stating the Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures"); *see also Brigham City v. Stuart,* 547 U.S. 398, 403 (2006) (the "warrant requirement is subject to certain exceptions").  Plaintiff alleges no facts showing that Defendant Fingers reasonably knew Plaintiff's consent was not voluntarily given to Defendant Rinck—i.e.: that Defendant Fingers' subsequent search of Plaintiff's home was unreasonable. *United States v. Garcia-Garcia*, 957 F.3d 887, 892 (8th Cir. 2020) (affirming district court finding that "a reasonable officer would believe [the plaintiff] gave his consent voluntarily—that is, his consent was not the result of 'duress or coercion, express or implied'") (quoting *United States v.*

---

[8] Notably, Plaintiff does not even plead Defendant Fingers or any other Defendant was near Plaintiff when Defendant Rinck allegedly threatened her and coerced  her into consenting to the warrantless search.

*Cedano-Medina*, 366 F.3d 682, 688 (8th Cir. 2004)).  For these reasons, the Court will dismiss Count III.

       iii.    **Counts II and IV–VI—Unlawful Search & Seizure against Defendants Rinck, Fingers, Ellis, and Jones**[9]

In seeking dismissal of Plaintiff's Counts II and IV–VI, Defendants argue Plaintiff failed to state a claim under 42 U.S.C. § 1982.  Doc. [23] at 10–11.  Plaintiff, however, contends that Defendants "misconstrue Plaintiff's allegations" because she asserted these claims under 42 U.S.C. § 1983, and not 42 U.S.C. § 1982.  Doc. [29] at 14–16.  According to Plaintiff, there is a typographical error in the Complaint's headers, with the headers stating "1982" instead of "1983."[10]  As such, the Court will not dismiss Counts II and IV–VI for failing to state a claim under 42 U.S.C. § 1982.

However, like the issue in Count III, Plaintiff fails to allege facts that plausibly show Defendants Ellis and Jones knew Plaintiff's consent was not voluntarily given to Defendant Rinck such that their subsequent search of Plaintiff's home was unreasonable.  As such, the Court will dismiss Counts V–VI.

    B.  **Counts VIII, X, and XII—Deprivation of Due Process Pursuant to § 1983 against Defendants Rinck, Fingers, Klein, and Ellis**

In Counts VIII, X, and XII, Plaintiff, B.M.S. and B.D.S. claim Defendants Rinck, Fingers, Klein, and Ellis deprived them of their Due Process rights when Defendants removed Plaintiff's children from her custody "without legal justification and/or due process."  Doc. [19] ¶¶ 148, 159,

---

[9] Plaintiff's claim against Defendant Rinck and Fingers for Unlawful Search & Seizure in Counts II and IV differs from her Unlawful Search & Seizure claims in Counts I and III also against Defendant Rinck and Fingers, because Counts II and IV focuses on Defendant Rinck and Fingers alleged conduct in preventing Plaintiff from entering her home and possessing the personal items within the home for nearly three weeks *after* the warrantless search, while the warrantless search forms the basis for Count I and III.
[10] The Court also notes that besides the headers, the entirety of the pleadings in Counts II and IV–VI mention § 1983 as the basis of liability and not § 1982.

170.[11]  Defendants argue that the claims are not plausible because, under Mo. Rev. Stat. § 210.125, a police officer, a law enforcement official, or a physician with "reasonable cause to believe that a child is in imminent danger" may take temporary custody of the children.  Doc. [23] at 12–13.  "At the Rule 12(b)(6) stage, this argument is without merit."  *Stanley v. Finnegan ("Stanley I")*, 899 F.3d 623, 627 (8th Cir. 2018) (rejecting a similar argument when denying a motion to dismiss in this context).

Even if that argument did have merit, Defendants still fall short in showing dismissal is warranted here.  The allegations in the Complaint, taken as true and viewed in Plaintiff's favor, state a plausible claim that Defendants lacked reasonable suspicion for removing Plaintiff's minor children from the home and custody of their parents.  *See id.* at 627 ("It is clearly established that the removal of children from their parents' custody violates a constitutional right if the removal occurs without reasonable suspicion.").  Moreover, the "Complaint also raises the inference that the decision to remove [Plaintiff's children] was motivated by" Plaintiff's opposition to consent to a warrantless search of her home.  *Id.* at 628.   As such, the Court finds that the allegations in the Complaint "plausibly allege that [Defendants] may be liable if the children were removed without reasonable suspicion."  *Id.*

C. **Counts IX and XI—Unreasonable Removal from the Home in Violation of the Fourth Amendment pursuant to § 1983 against Defendants Rinck, Fingers, Klein, and Ellis**

In their Counts IX and XI, B.M.S. and B.D.S. claim Defendants Rinck, Fingers, Klein, and Ellis violated their Fourth Amendment rights by conducting an unreasonable removal from their

---

[11] In her Count VIII, Plaintiff claims Defendants Rinck, Fingers, Klein, and Ellis deprived her of her Due Process rights by "removing [her] children for a period of forty (40) days without legal justification and/or due process."  Doc. [19] ¶ 148.  In their Counts X and XII, B.M.S. and B.D.S. claim Defendants Rinck, Fingers, Klein, and Ellis deprived them of their Due Process rights when Defendants seized and kept them from their parents "without legal justification and/or due process."  *Id.* ¶¶ 159, 170

home.  "The children have a fundamental right not to be unreasonably removed from their home." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 900 (8th Cir. 2020) (citing *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008)).  The Court agrees with Defendants that the Complaint fails to allege that some of the named Defendants took custody of B.M.S. and B.D.S.  The Complaint only alleges that Defendant Klein and Ellis took custody.  *See, e.g.*, Doc. [19] ¶¶ 65, 67, 77.  Because there are no allegations that Defendants Rinck or Fingers took custody of B.M.S. and B.D.S., the Court dismisses Counts IX and XI as pleaded against them.  However, for the same reasons discussed directly above in Counts VIII, X, and XII, the Court will not dismiss Counts IX and XI against Defendant Klein and Ellis.  *See Stanley v. Hutchinson ("Stanley II")*, 12 F.4th 834, 842–843 (8th Cir. 2021) (explaining "reasonable suspicion" standard may similarly apply to Fourth Amendment violations of child removal (citing *Stanley I*, 899 F.3d at 628)).

D.  **Counts XIII & XIV—Municipal Liability Against Defendant County**

Plaintiff brings two claims against Defendant County.  Local government bodies, like Defendant County, may be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer."  *Marsh v. Phelps Cty.*, 902 F.3d 745, 752 (8th Cir. 2018) (quoting *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  A municipality may be liable under §1983 for a violation of an individual's constitutional or statutory rights if the violation resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train, supervise, or discipline. *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (quoting *Monell*, 436 U.S. at 694 and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

i.   **Failure to Train, Supervise and/or Discipline (Count XIII)**

In her Count XIII, Plaintiff claims Defendant County failed to train, supervise, and discipline Defendant Rinck.  Defendants argue Plaintiff states only "rote, generalized, and conclusory" allegations that Rinck had a pattern of constitutional violations and that the County had knowledge of such.  Doc. [23] at 23; *see also Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (requiring, among other things, a notice of a pattern of unconstitutional acts committed by subordinates for municipality liability under § 1983 for a failure to train, supervise, or discipline). A plain look at the Complaint, however, tells a different story.  Plaintiff alleges Rinck had a history of warrantless searches, coercive and "overly-aggressive" behavior, routinely abusing his authority by issuing immediate orders to vacate property and prohibiting residents from lawfully entering properties.  Doc. [19] ¶¶ 85. 92, 102–111.  Plaintiff alleges that prior to June 8, 2017, Defendant County received multiple complaints about Defendant Rinck's actions and were aware of his reputation for being "an overly-aggressive officer" with a proclivity of "coercing and intimidating residents into allowing him to make warrantless entries into their residences."  *Id.* ¶¶ 104–108. Based on some of these incidents, Plaintiff alleged "Rinck has been the defendant in at least [two] other section 1983 case[s] alleging, among other things, violations of the plaintiffs' Fourth Amendment rights."  *Zorich v. St. Louis Cnty.*, 4:17-cv-1522-PLC, 2018 WL 6621525, at *30 (E.D. Mo. Dec. 18, 2018) (considering same evidence when denying defendant county's motion for summary judgment on plaintiff's failure-to-discipline claim regarding Rinck); *see* Doc. [19] ¶¶ 107–108.  Yet, despite its knowledge of Defendant Rinck's pattern of misconduct, Plaintiff alleges Defendant County allowed him to continue in his unlawful practices "without fear of repercussion or sanction."  *Id.* ¶ 111.  As one example, Plaintiff alleged "Rinck did not receive discipline for the events at issue in this case."  *Zorich*, 2018 WL 6621525, at *30 (considering same evidence

14

when denying defendant county's motion for summary judgment on plaintiff's failure-to-discipline claim); *see* Doc. [19] ¶¶ 99–103 (allegations that even after Defendant Rinck's supervising officers recommended his termination following Plaintiff's complaints, no action was taken as the result of these recommendations).  Accordingly, the Court denies Defendant County's motion to dismiss Plaintiff's failure-to-discipline claim on this basis.

ii.    **Unconstitutional Pattern, Practice, and Custom (Count XIV)**

In her Count XIV, Plaintiff claims Defendant County is liable for an unlawful pattern, practice, and custom.  A plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating, among other things, that the custom was a "moving force" behind the constitutional violation.  *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017). Defendants argue the Complaint contains "no well-pleaded facts that any of the County's alleged customs and/or policies were the moving force behind any constitutional violation any individual Defendant in this case."[12]  Doc. [23] at 20.  Here, Plaintiff sufficiently pleaded that Defendant County has an "unconstitutional custom" related to its enforcement of its housing code regulations. As pleaded by Plaintiff, Defendant Rinck was only one of two officers assigned to Defendant County's problem properties unit and conducted nearly all of that unit's searches.  Doc. [19] ¶¶ 109–10.  According to Plaintiff, Defendant Rinck had a history— of which Defendant County allegedly had knowledge—of issuing and enforcing unlawful immediate orders to vacate homes and residences, prohibiting and/or harassing citizens with properties subject to orders to vacate from lawfully accessing their properties, and making warrantless entries and searches into residences in the absence of probable cause and/or any other legal justification. *Id.* ¶¶ 85, 88, 90–

---

[12] To sufficiently plead the existence of an unconstitutional custom or policy, a plaintiff need not specifically plead the existence of such policy or custom but instead plead sufficient facts supporting that such an unconstitutional policy or custom exists. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

92, 183, 185.  Yet, despite knowledge of Defendant Rinck's pattern of misconduct, Defendant County allegedly allowed him to continue in his unlawful practices without repercussion or sanction.  *Id.* ¶ 111.  Consequently, concerning the conduct at issue here, Rinck and other Defendants conducted an unauthorized and warrantless search of Plaintiff's home, issued and enforced an immediate order to vacate against her property, and unlawfully prohibited and denied Plaintiff access to her home.  *Id.* ¶¶ 90–92, 93–95, 99–102, 183.  The Court concludes that Plaintiff pleaded facts that plausibly show that Defendant County's unofficial custom of inaction towards allegations of unlawful conduct was the "moving force" behind Plaintiff's injury.  *Malone*, 847 F.3d at 955; s*ee also Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("Evidence that a police department has failed to [remediate] previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to [violate the constitution] without concern for punishment.").

E.  **Count XVI—Failure to Train, Supervise, & Discipline against Defendant Speight**

In her Count XVI, Plaintiff claims Defendant Speight failed to train, supervise, and discipline Defendant Rinck and Jones.  Under § 1983, a supervising official may be liable for the actions of his inferior officers when his "failure to properly supervise and train the offending employee[s] caused a deprivation of constitutional rights." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019).  A supervising official, like Defendant Speight, is entitled to qualified immunity unless Plaintiff proves Defendant Speight (1) received notice of a pattern of unconstitutional acts committed by a subordinate and (2) was deliberately indifferent to or authorized those acts.  *S.M.*, 808 F.3d at 340.  In support of their Motion to Dismiss Count XVI, Defendants argue that Plaintiff failed to adequately plead the first element necessary for supervisory liability to attach.

First, Defendants argue Plaintiff did not properly plead that Defendant Speight was the supervisor of Defendant Rinck.  But this argument is without merit.  *See, e.g.*, Doc. [19] at ¶¶ 83, 109–110, 198–200.  Second, Defendants argue that Plaintiff failed to provide facts to support the assertion that Defendant Speight had knowledge that Defendants Rinck and Jones routinely engaged in unconstitutional acts, *id.* ¶¶ 85, 92, like the acts directly at issue in this case.  The Court agrees, but only in part.  As previously explained, Plaintiff alleged sufficient facts that plausibly show Defendant Speight had knowledge of Defendant Rinck's pattern of unconstitutional acts. However, Plaintiff does not plead anything similar regarding Defendant Jones; Plaintiff does not identify a single instance of a prior unconstitutional act committed by Defendant Jones under the command of Defendant Speight, much less a *pattern* of unconstitutional acts, much less a pattern of unconstitutional acts of which Speight was *aware*.  "Allegations of generalized notice are insufficient."  *S.M.*, 808 F.3d at 340.  As such, the Court partially dismisses Count XVI only as it pertains to Defendant Speight's supervisory liability stemming from Defendant Jones' conduct.

F.   **Count XV—Unlawful Seizure in Violation of the Fourth Amendment Pursuant to § 1983 against Defendant Speight**

In her Count XV, Plaintiff claims Defendant Speight unlawfully seized her home via an order to vacate.  Defendants argue that Plaintiff failed to state a claim because Plaintiff did not properly plead supervisory liability as to Defendant Speight.  Doc. [23] at 25; Doc. [33] at 11. Specifically, Defendants assert that Defendant Speight cannot be liable for Defendant Rinck's misconduct.  *Id.*   But Defendants misinterpret Count XV.  Plaintiff pleaded a claim against Defendant Speight for the unlawful seizure of her home through *his* "rubberstamp" approval of the alleged unlawful order to vacate.  *See, e.g.*, Doc. [19] ¶¶ 80–85; 83 ("Defendant Speight, as the chief building inspector and/or manager of code enforcement, was responsible for making final approvals regarding the issuance of immediate orders to vacate in St. Louis County, including the

immediate order to vacate issued for Ms. Perry's residence."). Defendant Speight's liability, if any, is seperate and distinct from anything Defendant Rinck may have done. Accordingly, the Court denies Defendants' Motion to dismiss Count XV on this basis.

CONCLUSION

The Court dismisses Count VII, per Plaintiff's direction. *See* Doc. [29] at 14. The Court dismisses Counts III and V–VI without prejudice. The Court partially dismisses Count XVI, without prejudice, but only as it pertains to Defendant Speight's supervisory liability stemming from Defendant Jones' conduct. The Court dismisses Counts IX and XI without prejudice as pleaded against Defendants Rinck or Fingers only. The Court allows Plaintiff leave to amend the dismissed claims in accordance with this Memorandum & Order. The Court declines to dismiss the remaining claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [22], is **DENIED in part** and **GRANTED in part**.

**IT IS HEREBY ORDERED** that Defendant Speight's Motion to Dismiss, Doc. [14], is **DENIED** as **MOOT**.

Dated this 25th of July, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE