UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWN PERRY, ET AL, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | Cause No.: 4:22-cv-00140-MTS |
| SAINT LOUIS COUNTY, et al ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S TRIAL BRIEF**

## I.   Introduction

This Honorable Court ruled that Count I for unconstitutional search will be bifurcated and submitted to the jury and contingent upon a result of the jury finding coercive conduct, then punitive damages for Count I and compensatory damages for XIV and XIII (Monell liability) will be submitted.to the jury a to the extent Defendant St. Louis County's custom or its failures to train, supervise, and discipline proximately caused the unlawful search of Plaintiff's home. Court Order and Memorandum, Doc. [173] at *42. Plaintiff will refer to the bifurcated trial as *"Phase One"* and *"Phase Two"* for convenience.

## II.   Evidentiary Issues

Plaintiff believes the following evidentiary issue will come up at trial:

The Court has excluded, in granting Defendant's motion in limine, any testimony by Mike Cross, housing inspector and partner to Officer Rinck in their work for the problem properties unit during *Phase One* of the trial. In Defendants' Motion in Limine #4, arguing it is not relevant under rule 401 and constitutes inadmissible character evidence under Rule 404(b). Doc. [172], *Defendants' Motions in Limine and Memorandum in Support of Motions in Limine*, at *5-6.

1

Plaintiff believes the testimony of Housing Inspector Mike Cross, Sgt. Means, Lt. Rodriguez, and Phil Jones is relevant and admissible to proving Plaintiff's case on Count I coercive search. Mr. Cross will testify, as he does in his affidavit, that threatening to arrest St. Louis County citizens on old traffic warrants and/or separate children from parents in order to coerce entry into their homes was the daily habit, routine and *modus operandi* of Defendant Rinck. ("One of the most common tactics Officer Rinck used was leveraging property owners' children against them. If the resident had children Rinck would use the children to coerce entry**, every time."** [emphasis added]. Affidavit of Mike Cross, Doc. 97-3, at ¶ 16. The witness, Mr. Cross's claims aren't merely that Defendant Rinck *occasionally* acted wrongfully in the past and in a substantially similar manner as he did at the Perry home, but that Defendant Rinck acted in this manner ***every time***, on a daily basis, and that he did it at the behest and/or to the benefit of high ranking government officials including the County Executive's Office as part of a *plan* to gain entry into homes, "light them up" with citations Doc 126-5, Depo of Sgt. Means 84:3-13, 85:3-11) and get them "out of the neighborhood" Doc. 127-14. Mike Cross Affidavit, at ¶ 7, 25. Indeed, Lt. Rodriquez pejoratively referred to Defendant Rinck as St. Louis County's "secret weapon". Doc. 91-8 at 179:6-25, Charlie Rodriguez Deposition at 179:6-25. This testimony by Mike Cross, along with similar testimony by Defendant Rinck's own police department supervisors, Sgt. Means and Lt. Rodriquez, alleging knowledge of similar conduct, habit, routine, practice, and plan, should be admitted under at least two separate Federal Rules of evidence, as Plaintiff argued in her Opposition to Defendant's Motions in Limine[1].

---

[1] Plaintiff was informed by the Court that the trial would be bifurcated after she submitted her responses to Defendant's Motion in Limine six days before trial and therefore asks the Court for some latitude in arguing the admissibility of habit, reputation, routine, plan, and modus evidence in support of her Count 1.

In *Manyard v. Sayles*, 817 F.2d 50 (8th Cir. 1987) the Plaintiff sought to introduce testimony from a Kansas City police officer against a police officer defendant, including her testimony about the "code of silence" in which officers have a habit and routine practice of refusing to implicate fellow officers for using excessive force. The district court excluded this habit and practice testimony and the exclusion was reversed by the Eighth Circuit. *Id*. at 5*I,* 52. In the Perry case, Defendants seek to exclude *even more specific* habit and routine evidence that existed in Manyard., and not just one witness but three, including Mr. Cross, and Defendant Rinck's supervisors, Lt. Rodriquez and Sgt Means.

- **RULE 404**

*First,* as Plaintiff has argued, Mike Cross, Lt. Rodriquez and Capt. Mean's testimony should be admissible under 402(b)(2). Mike Cross's testimony, particularly, regarding Officer Rinck's daily pattern of coercion of residents should be allowed in under rule 404(b)(2). 404(b)(2) allows prior bad acts to be admitted if they are being used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Actions from Rinck include "If the residents had children to coerce entry, *every time*. He would threaten to take the children or contact the Division of Family Services if they did not consent to the search of their homes" Cross Aff. Doc. 97-3 *16. And, according to Defendant Rinck's partner, "*If the residents did not have children, Officer Rinck would look for outstanding traffic tickets and warrants and Officer Rinck would threaten to arrest the residents if they didn't let him in their home*". Doc. 97-3 *16. This is overwhelming 404(b)(2) evidence of Defendant Rinck's **habit, routine, modus operandi, plan, and preparation** for coercing entry into St. Louis County citizen's homes. Indeed, it's quite clear from all the testimony from the people closest to Defendant Rinck, including his other problem property partner, Phil Jones, that Defendant Rinck's

3

actions were no mere anomaly or accident or "one time" incident, and this testimonial evidence is critical to support Plaintiff's allegations.

Moreover, Defendant Rinck's actions were shown to be part of consistent and daily plan, demonstrating his intent and knowledge. Indeed, it is clear from testimony that not only was it a plan and mode of operation, but that Defendant Rinck was recognized for his conduct and even "used" because of it ("secret weapon") R Doc. 91-8 at 179:6-25, Charlie Rodriguez Deposition at 179:6-25. Indeed, at the close of Rincks's deposition, even Defendant Rinck admitted he was "used" [Doc. 79-4, Deposition of Robert Rinck, at 335:2-99]. Furthermore, many St. Louis County citizens filed complaints against Rinck alleging the exact same conduct, unlawful entry and oppressive conduct and his supervisors and St. Louis County knew about all these complaints. R. Doc 126-5, Depo of Sgt. Means 63:18-22, 69:7-10). Rinck had a long list of complaints about how he tried to get into people's homes, including by threatening to "light them up." R. Doc 126-5, Depo of Sgt. Means 84:3-13, 85:3-11)

As long as the evidence is (1) relevant to a material issue, (2) similar in kind and not overly remote in time, (3) supported by sufficient evidence to support a jury finding that the defendant committed the prior act, and (4) of probative value not substantially outweighed by its prejudicial effect, such a pattern is admissible. (*United States v. Monds*, 945 F.3d 1049, 1052 (8th Cir. 2019), (*United States v. Ponto,* 91 F.4th 929, 932 (8th Cir. 2024), *United States v. Hansen*, 111 F.4th 863, 868-869 (8th Cir. 2024), *United States v. Walker,* 470 F.3d 1271, 1274 (8th Cir. 2006), *United States v. Radermacher*, 92 F.4th 743, 745 (8th Cir. 2024). Here, while the Defendant may argue such evidence is prejudicial, this does not outweigh its probative value. The probative nature of Cross, Rodriquez and Mean's testimony is overwhelming.

- **RULE 406**

*Second*, this witness testimony is admissible under Rule 406. Rule 406 permits*, "Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The Court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."* Fed. R. Evid. 406. Here, the evidence is also corroborated by the person closest to Defendant Rinck, his daily partner for years immediately prior to the Perry incident, Mike Cross, and his two police department supervisors, Lt. Rodriquez and Sgt. Means. "Agreement is general that habit evidence is highly persuasive as proof of conduct on a particular occasion." 2011 Advisory Committee on Proposed Rule 406, Citing *McCormick* §162, p. 341. In this case, Defendant Rinck was so well known for his habitual coercive and oppressive conduct when attempting to search a home (or worse, remove a family from the neighborhood), that his very method and *modus operandi* became known internally among officers as being "Rincked." Affidavit of Mike Cross, R. Doc. 97-3, at  ¶ 30. Indeed, even Defendant Rinck knew people would use the term **"Rincked"** demonstrating that Defendant Rinck was benefitting from such a reputation on the Ninth Floor, because as his supervisor, Lt. Rodriquez testified throughout his deposition, Rinck was protected from supervision and consequences. [R. Doc 79-15, Deposition of Lt. Rodriguez, *passim*]

Second, his testimony is admissible under 406. Rule 406 permits, "Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." FED. R. EVID. 406. "Agreement is general that habit evidence is highly persuasive as proof of conduct on a particular occasion." 2011 Advisory Committee on Proposed Rule 406, Citing

5

McCormick §162, p. 341. In this case, Officer Rinck was so well known for his habitual coercive and oppressive conduct when attempting to remove a family from their home that his method of handling problem properties became known internally among officers as being ***"Rincked."*** Affidavit of Mike Cross, Doc. 97-3, at ¶ 30. In a civil rights case where proving Officer Rinck's intent is critically important, establishing that his conduct was consistent with his regular patterns and practices of behavior speaks to his pattern and practice as well as his intent and *modus operandi*. Testimony that speaks to a routine pattern and practice of police officers has been found admissible under FED. R. EVID. 406.

- **Manyard v. Sayles, 817 F.2d 50 (8th Cir. 1987)**

In *Manyard v. Sayles*, 817 F.2d 50 (8th Cir. 1987) Plaintiff sought to introduce testimony from an officer about what her fellow department employees refer to as the "code of silence" in which officers have a routine pattern and practice of refusing to implicate or denigrate fellow officers for wrongdoing when writing police reports. The district court denied the admission of the testimony about the routine pattern and practice of officers using the "code of silence" to conceal information that reflects poorly on police officers or on the department. *Id*. at 51. Because "Maynard's case rested in part upon discrediting the officers' story, the District Court's refusal to admit Stein's opinion testimony must be deemed reversible error." *Id.* at 52.

Plaintiff believes that if excluding three or more witnesses in our case who can testify to the routine pattern, or practice of Officer Rinck would constitute reversible error—two more witnesses than were needed for the 8th Circuit to find reversible error over the exclusion of one witness in Maynard.

In a case where proving Defendant Rinck violated the constitutional rights of Plaintiff, evidence of Defendant Rinck's intent, habit, plan, and modus operandi is critically probative,

6

establishing that his conduct at the Perry home was consistent with his regular habits, patterns and practices. Depriving the jury of such overwhelming evidence of Defendant Rinck's routine and daily behavior will prejudice Plaintiff's ability to meet her burden of proof.

### III.   Relevant Facts and Law to Count I, XIII, and XIV

It has been frankly and repeatedly admitted by agents of St. Louis County that Rinck was not supervised or disciplined throughout his career working with St. Louis County police problem properties unit. Here, Plaintiffs merely need to prove that St. Louis Count was on notice of their own failure to train, supervise, **or** discipline Defendant Rinck.

If Plaintiffs are successful in establishing a constitutional violation on count one, the jury can find or the Court can issue directed verdicts on the remaining counts, as there are no further disputes of law or fact[2]. The presence of cooperative supervisors Rodriguez and Means at the scene establishes that this unconstitutional search was carried out as a pattern and practice of St. Louis County, and the lack of discipline, training, and supervision allowed him to continue to commit constitutional violations, including the one at issue in this case.

- **Count 1 – Unconstitutional Search by Defendant Rinck**

"Defendants argue that this Court should grant Officer Rinck summary judgment on Count I because, based on the above factors, Plaintiff gave him free and voluntary consent to search her home. Doc. [76] ¶ 6b. However, viewing the evidence in a light most favorable to Plaintiff, the Court finds that there is a genuine dispute of fact as to whether Plaintiff's eventual consent was uncoerced. Plaintiff states that she allowed Officer Rinck and Inspector Jones into her home only

---

[2] Indeed, were it not for the disputes related to Count I, Plaintiff would have submitted for summary judgment on Counts XIII and XIV, as the evidence is overwhelming, if not admitted by Defendant Rinck's supervisors.

7

after an hour-long, heated exchange on her property—at times surrounded by at least four police officers—during which she repeatedly denied the officers entry into her home. Doc. [84-4] at 51, 57–58, 67; Doc. [127-2] ¶ 5. She permitted Officer Rinck and other officials inside only after Officer Rinck made various threats, culminating in an explicit ultimatum that, if Plaintiff did not let him inside, she would never see her kids again. Doc. [84] at 58. Only then did Plaintiff relent, saying, "I guess I don't have any other choice." Id." *See* Memorandum and Order, R. Doc 173.

Reasonableness, "the touchstone of Fourth Amendment analysis," is "generally assessed by carefully weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Lewis,* 864 F.3d 937, 945 (8th Cir. 2017). The balancing analysis requires a thorough examination of "the totality of the circumstances" to determine whether a state action was reasonable. *United States v. Farnell,* 701 F.3d 256, 261 (8th Cir. 2012) (citation omitted).

- **Count XII – Municipal Failure to Train, Supervise, or Discipline**

If Plaintiffs effectively prove Count 1, Plaintiff will seek a verdict from the jury and/or Court in Plaintiff's favor on Count XIII. If it is proven by Plaintiffs that Officer Rinck used coercion to gain entry into the Perry home, then there is essentially no material factual disputes regarding County XIII, as multiple supervisory witnesses have already testified that Officer Rinck was not, and could not be supervised or disciplined because of his connections to high ranked County officials. The only issues that remain are disputes about jury instructions.

St. Louis County's method for investigating complaints, supervising and disciplining Defendant Rinck "demonstrated deliberate indifference or tacit authorization of the offensive acts." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1031 (8th Cir. 2012) (quoting *Liebe v. Norton,* 157

8

F.3d 574, 579 (8th Cir. 1998)). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., Mo.,* 829 F.3d 695, 699-700 (8th Cir. 20 16) (citations omitted).

- **Count XIV – Unconstitutional Municipal Custom and/or Practice**

Likewise, if Plaintiffs effectively prove Count 1, Plaintiff will seek a verdict from the jury and/or Court in Plaintiff's favor on Count XIV. Here, again, Plaintiff has admissions in the record from several witnesses that St. Louis County had a custom or practice of allowing and indeed, benefitting from Officer Rinck's coercive searches to enter homes for various purposes including citing them and getting people "out of the neighborhood" at the behest of the Housing Department and/or County Executive's office. Plaintiffs herein will demonstrate evidence a long list of Bureau of Professional Services complaints by St. Louis County citizen, alleging substantially similar conduct. There were complaints (and multiple litigations involving Defendant Rinck) documenting a custom of allowing him to commit unconstitutional searches of homes going back over a decade. This Court's summary judgment ruling has already analyzed the law thoroughly regarding this claim.

## IV.   REMEDIES AND DAMGES

Plaintiffs remedies for her claims include compensatory damages, punitive damages, and attorneys' fees. The Supreme Court has established that 42 U. S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 305-306 (1986)

9

(quoting *Carey* v. *Piphus,* 435 U.S. 247, 253 (1978)). "Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Id.* "'[T]he basic purpose' of § 1983 damages is 'to *compensate persons for injuries* that are cause d by the deprivation of constitutional rights.'" *Id.* at 307 (quoting *Carey* v. *Piphus,* 435 U.S., at 254). Compensatory damages "may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation, personal humiliation, and mental anguish and suffering.'" *Id.* (quoting *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 350 (1974)); *see also Jackson v. Crews,* 873 F.2d 1105, 1109 (8th Cir. 1989). Plaintiff has suffered severe emotional distress, and serious of other foreseeable damages, as a result of Defendants' actions. Plaintiff seeks compensatory damages in the form of monetary harms, as well as compensation for emotional damages, humiliation; great fear for her safety and that of her family; pain of the mind as well as the body; fear, apprehension, depression, anxiety, and loss of enjoyment of life; loss of faith in her society and government; and consternation, among other things.

"Punitive damages may also be awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff." *Guzman v. Western State Bank,* 540 F.2d 948, 953 (8th Cir. 1976) (internal citations omitted). Furthermore: To recover punitive damages it is sufficient for the plaintiff to show either that the defendant acted "under color of [a] statute, ordinance, regulation, custom or usage of any State or Territory," and with actual knowledge that he was violating a right "secured by the Constitution and laws" *or* that the defendant acted with reckless disregard of whether he was thus violating such a right. *Id. (quoting Adickes v.* S. *H Kress* and *Co.,* 398 U.S. 144, 233 (1970) (Brennan, J., concurring in part and dissenting in part).

10

Plaintiff is therefore entitled to have the jury determine an award for compensatory damages and punitive damages under the facts of this case. "Beyond proof of actual damage, the basis for an award of punitive damages is proof of malice in the sense that defendant is shown to have done a wrongful act intentionally and without just cause or excuse." *Id* (citing *Beggs v. Universal* C. *IT. Credit Corp.,* 409 S.W.2d 719, 722 (Mo. 1966)). Evil intent "may be implied from reckless disregard of another's rights and interests .... " *Id.*

In addition to compensatory and punitive damages, "42 U.S.C. § 1988 provides that in federal civil rights actions a district court may, in its discretion, award the prevailing party reasonable attorney's fees as part of the costs." *Jackson v. Crews,* 873 F.2d 1105, 1109 (8th Cir.1989) (citing *Hensley v. Eckerhart,* 461 U.S. 424 (1983)). "The initial estimate of a reasonable attorney fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Browning v. White,* 940 S.W.2d 914, 926 (Mo. App. 1997) (citing *Blum v. Stenson,* 465 U.S. 886, 888 (1984)). Plaintiff will ask the Court to order Defendants to pay her attorneys' fees as part of the costs, should a jury find in Plaintiffs favor on any of her 28 U.S.C. § 1983 claims.

Dated: November 1, 2024

Respectfully submitted,

*[signature]*

Mark J. Pedroli, MBE 50787
***PEDROLI LAW, LLC***
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax

Mark@PedroliLaw.com

**ATTORNEY FOR PLAINTIFFS**

**Certificate of Service**

The undersigned hereby certifies that, on November 1, 2024, a true and accurate copy of the foregoing was filed electronically with the Clerk of this Court, through the Court's electronic filing system, and thereby served on counsel of record for all parties.

*/s/ Mark Pedroli*
